## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LYMAN GILBERT LENKER, Trustee of the<br>Virginia Lenker Irrevocable Trust, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-0532-CVE-PJC |
| | ) | |
| KEVIN HAUGRUD[1], in his official capacity as | ) | |
| Acting Secretary of the United States | ) | |
| Department of Interior, UNITED STATES | ) | |
| BUREAU OF INDIAN AFFAIRS, MICHAEL | ) | |
| BLACK, in his official capacity as Director of | ) | |
| the United States Bureau of Indian Affairs, | ) | |
| and CEJA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Now before the Court are a motion to dismiss (Dkt. # 39) of Kevin Haugrud in his official

capacity as Acting Secretary of the United States Department of the Interior, the United States

Bureau of Indian Affairs (BIA), and Michael Black in his official capacity as Director of the BIA

(federal defendants), and a summary judgment motion filed by Ceja Corporation (Ceja) (Dkt. # 13).

The federal defendants ask the Court to dismiss plaintiff's claims against them under Federal Rule

of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. # 39. Ceja moves for

summary judgment on the grounds that the claims against it are barred by the statute of limitations

and by the doctrine of consent. Dkt. # 13.

---

[1]     Kevin Haugrud is now the Acting Secretary of the Department of Interior. Under Federal
Rule of Civil Procedure 25(d), Haugrud is automatically substituted as the defendant.

## I.

This case arises from the BIA's approval of an oil lease and two drilling permits on the subsurface mineral estate underlying plaintiff's lands. In the Osage Allotment Act, Congress established a subsurface mineral estate trust held by the United States on behalf of the Osage Nation. Act of June 28, 1906, ch. 3572, 34 Stat. 539; see also Osage Nation v. Irby, 597 F.3d 1117, 1120-21 (10th Cir. 2010). The Superintendent of the Osage Agency is authorized to approve oil and gas leases made by the Osage Tribal Council involving the Osage mineral estate. See 25 C.F.R. § 226.2. Once a lease has been approved, the lessee must submit a separate application and obtain the Superintendent's approval before drilling. Id. at § 226.16(b). The National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA), requires the BIA to conduct an environmental impact study before the Superintendent may approve a lease or drilling permit. See 42 U.S.C. § 4332(2)(C); Davis v. Morton, 469 F.2d 593, 597 (10th Cir. 1972).

On August 2, 1978, the Superintendent approved a lease between the Osage Nation and Ceja that included land plaintiff owns. Dkt. # 17, at 17. Plaintiff alleges that the BIA violated NEPA by failing to conduct any environmental analysis prior to approval of the lease. Id. Plaintiff also alleges that no notice of the lease approval was sent to plaintiff's predecessors-in-interest. Id. Plaintiff asserts that Ceja submitted an application to the BIA to drill well 7 on plaintiff's property, which the Superintendent approved on February 16, 2010. Id. Plaintiff alleges that the Superintendent also approved Ceja's application to drill well 6H on plaintiff's property.[2] Id. at 19. Plaintiff asserts that

---

[2] Plaintiff's amended complaint (Dkt. # 17) does not specifically allege when the Superintendent approved well 6H. The federal defendants have provided documentation that well 6H was approved on January 27, 2006. Dkt. # 39-3, at 2. However, the date of well 6H's approval does not affect the Court's decision in this matter because no matter when the Superintendent approved the well, plaintiff was required to exhaust his administrative

the BIA failed to comply with NEPA prior to approval of both well 7 and well 6H, and that the BIA failed to send plaintiff or his predecessors-in-interest notice that either well had been approved. Id. at 18-19. Plaintiff alleges that Ceja drilled wells 7 and 6H and constructed oil and gas related facilities on plaintiff's property. Id. at 19. Plaintiff asserts that Ceja's actions caused significant erosion and other environmental damage. Id. Plaintiff also alleges that the BIA has approved other "oil and gas related activity" on plaintiff's property in violation of NEPA and without notice to plaintiff or his predecessors-in-interest. Id. at 20.

On August 12, 2016, plaintiff brought this suit against the federal defendants and Ceja. Dkt. # 2. Plaintiff filed an amended complaint (Dkt. # 17) on October 7, 2016. Plaintiff brings his claims against the federal defendants under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (APA). Plaintiff asks that the Court enter declaratory judgment finding that the Superintendent's approval of the lease, well 7, well 6H, and any unknown leases, drilling permits, or workover permits approved since January 1, 1970 concerning plaintiff's land, violated NEPA and are legally inoperative. Dkt. # 17, at 20-27. Plaintiff also asserts that Ceja's entry onto his property constitutes trespass because Ceja's lease and drilling permits are inoperative, and asks the Court to enjoin Ceja from entry upon his land without a valid oil and gas lease or permit. Id. at 27. Finally, plaintiff alleges that he is entitled to rent payments under Oklahoma law for Ceja's occupation of his land for the six years preceding the filing of the complaint. Id. at 28. The federal defendants now move for dismissal of plaintiff's claims against them for lack of subject matter jurisdiction, Dkt. # 39, at 1, and Ceja moves for summary judgment on the claims against it, Dkt. # 13, at 1.

---

remedies. See section II.B.

## II.

The Court first considers the federal defendants' motion to dismiss (Dkt. # 39). The federal defendants argue that plaintiff's claims are barred by the statute of limitations, that plaintiff has failed to establish a waiver of sovereign immunity, that plaintiff has failed to exhaust his administrative remedies, that plaintiff has failed to identify any final agency action with respect to his claim regarding unknown leases and permits, and that plaintiff's claims are moot. Dkt. # 39.

## A.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must determine whether the plaintiff can establish that the Court has subject matter jurisdiction over the defendant. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) (citing Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377 (1994)). Rule 12(b)(1) motions can take the form of a facial attack, whereby "the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," or the form of a factual attack, whereby "the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." Paper, Allied-Indus., Chem. and Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citation omitted). The federal defendants' motion presents both a facial attack and a factual attack. Dkt. # 39, at 7.

## B.

The federal defendants argue that plaintiff has failed to identify a final agency action reviewable under the APA because plaintiff has failed to exhaust his administrative remedies. Dkt. # 39, at 19-21. Plaintiff does not allege that he appealed the Superintendent's decisions, but instead

4

argues that he was not required to exhaust administrative remedies because the Superintendent's approvals of the lease and drilling permits are final agency actions not subject to administrative appeal. Dkt. # 41, at 24. Under the APA, final agency actions for which there are no other adequate remedies in a court are subject to judicial review. 5 U.S.C. § 704. The actions of BIA officials are not final unless administrative remedies have been exhausted. See 43 C.F.R. § 4.314; 25 C.F.R. § 2.6; see also Coosewood v. Meridian Oil Co., 25 F.3d 920 , 924-25 (10th Cir. 1994). Under the BIA regulations, any decision or order issued by the Superintendent related to governing the leasing of Osage reservation lands for oil and gas mining may be appealed pursuant to 25 C.F.R. part 2.[3] See 25 C.F.R. § 226.44. The exhaustion requirement "recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 550 (10th Cir. 2001) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Plaintiff argues that he was not required to exhaust his administrative remedies for two reasons: (1) neither plaintiff nor his predecessors-in-interest received a notice of appeal rights, and (2) the approvals were effectively decisions of the Assistant Secretary, which are final unless the decision provides otherwise. Dkt. # 43, at 24.

Plaintiff alleges that the BIA failed to notify him or his predecessors-in-interest when the Superintendent approved the lease and drilling permits. However, even if the BIA failed to give any notice of the Superintendent's decisions, plaintiff is not excused from exhausting his administrative remedies. A BIA official making a decision "shall give all interested parties known to the

---

[3]     The Superintendent's approval of leases and drilling permits were also appealable when the initial lease was approved, see 25 C.F.R. § 183.44 (Feb. 17, 1978), and when the drilling permits were approved, see 25 C.F.R. § 226.44 (Aug. 14, 1990).

5

decisionmaker written notice of the decision by personal delivery or mail." 25 C.F.R. § 2.7(a).

Written notice must include a statement that the decision may be appealed and detail the appeal

procedures. Id. § 2.7(c). "Failure to give such notice shall not affect the validity of the decision or

action but the time to file a notice of appeal regarding such a decision shall not begin to run until

notice has been given." Id. § 2.7(b). Thus, if the BIA fails to properly notify an interested party, the

time to appeal the decision is extended, but plaintiff's obligation to pursue an administrative appeal

before filing suit in federal court is unchanged. See Begay v. Pub. Serv. Co. of N.M., 710 F. Supp.

2d 1161, 1205 (D.N.M. 2010) ("Failure of the BIA to provide a notice does not necessarily cancel

the administrative-remedy process. Instead, failure of the agency to give notice of the initial agency

action simply extends the time in which the plaintiff can appeal that action.") (citing Cheyenne-

Arapaho Tribes Okla. v. United States, 966 F.2d 583, 588 (10th Cir. 1992)); Nulankeyutmonen

Nkihtaqmikon v. Impson, 573 F. Supp. 2d 311, 321-22 (D. Me. 2008) ("Although § 2.7 can extend

the time limits for filing a notice of appeal, it does not eliminate the obligation to exhaust

administrative remedies by proceeding with an appeal once notice is given."). Therefore, even if

plaintiff received no notice from the BIA regarding the Superintendent's approvals of the lease and

drilling permits, plaintiff is still obligated to exhaust his administrative remedies.

Plaintiff also argues that the Superintendent's decisions were final agency actions. Decisions

made by the Assistant Secretary are final and immediately effective unless the Assistant Secretary

provides otherwise in the decision. 25 C.F.R. § 2.6(c). Plaintiff argues that because the

Superintendent approved the lease and drilling permits pursuant to authority delegated to him by the

Assistant Secretary, the Superintendent's approval of the lease and drilling permits were final

agency actions. Dkt. # 43, at 24. Plaintiff's argument is contrary to the plain text of the regulations.

6

Section 2.6(c) states that decisions made <u>by</u> the Assistant Secretary are final, not decisions made

<u>pursuant to</u> the Assistant Secretary's authority. Further, 25 C.F.R. Part 226, which contains the BIA

regulations relating to the leasing of Osage reservation lands for oil and gas mining, explicitly states

that "any decision or order <u>issued by or under the authority of</u> the Superintendent" is subject to

appeal. 25 C.F.R. § 226.44 (emphasis added). Thus, § 226.44 makes clear that not only are the

Superintendent's decisions appealable, but also if a regulation is meant to apply to an official acting

under the authority of another, the regulations will explicitly state that fact. Plaintiff has not cited

any authority, or provided any other reason, for the Court to deviate from the plain language of the

BIA regulations. Thus, the decisions of the Superintendent to approve the lease and drill permits

were subject to appeal and not final agency actions. Because the Superintendent's decisions were

subject to appeal, plaintiff must exhaust his administrative remedies by fully availing himself of the

BIA's appeal procedure before he may bring a suit under the APA. <u>See</u> <u>Osage Producers Assoc. v.

Jewell</u>, 191 F. Supp. 3d 1243, 1252 (N.D. Okla. 2016) ("BIA regulations allow for intra-agency

review of all decisions and orders made by the Superintendent . . . and require exhaustion of these

procedures as a prerequisite to APA review."). Therefore, plaintiff's claims against the federal

defendants should be dismissed for lack of subject matter jurisdiction.[4]

### III.

Before considering Ceja's motion for summary judgment (Dkt. # 13), the Court must

determine whether it has subject matter jurisdiction over plaintiff's claims against Ceja once the

claims against the federal defendants have been dismissed. Federal courts are courts of limited

---

[4]     Because the Court finds that plaintiff's claims against the federal defendants should be
dismissed for failure to exhaust administrative remedies, the Court need not address the
federal defendant's other arguments for dismissal.

7

jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). Plaintiffs have the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). The Court has an obligation to consider whether subject matter jurisdiction exists, even if the parties have not raised the issue. The Tenth Circuit has stated that "[f]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006).

Plaintiff's claims against Ceja for trespass and rent payment sound in state law. See Dkt. # 17, at 27-28. Plaintiff's complaint asserts that the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). However, because the Court lacks subject matter jurisdiction over plaintiff's federal claims, it may not exercise supplemental jurisdiction over related state claims. See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1166-67 (10th Cir. 2004) (holding that the district court exceeded its authority by retaining jurisdiction over state law claims against non-diverse parties when the federal claims were dismissed for lack of subject matter jurisdiction); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d

Cir. 1996) ("[S]ince a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims."). Thus, for the Court to have subject matter jurisdiction over plaintiff's claims against Ceja, there must be an independent basis for jurisdiction.

The federal question statute confers jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)). The "well-pleaded complaint rule" requires that the complaint itself present the federal question, rather than an anticipated defense. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672 (1950); Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) ("[a] defense that raises a federal question is inadequate to confer federal jurisdiction"); Constr. Laborers Vacation Trust, 463 U.S. at 10 ("a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise").

Plaintiff does not assert that a federal law created his cause of action against Ceja, but there is a question as to whether plaintiff's claims "necessarily depend[] on resolution of a substantial question of federal law." To invoke federal question jurisdiction on the basis of a necessary and substantial question of federal law, the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-

9

state balance approved by Congress." Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation, 770 F.3d 944, 947 (10th Cir. 2014) (quoting Gunn v. Minton, 133 S. Ct. 1059, 1065 (2014)). Moreover, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction will generally be inappropriate." Id. (quoting Empire, 547 U.S. at 700-01) (omission in original).

Plaintiff's claims against Ceja involve a federal issue that is an essential element of the claims. In Gilmore v. Weatherford, 694 F.3d 1160 (10th Cir. 2012), the Tenth Circuit found that the plaintiff's state conversion claim necessarily raised a federal issue because the plaintiffs alleged that the defendant violated their property rights by removing chat without approval from the Secretary of the Interior, as required by federal law. Id. at 1173. A federal issue was necessarily raised because "[t]o win under this particular theory of conversion, plaintiffs must show that the Secretary's advance approval is required under federal law." Id. Here, plaintiff alleges that Ceja trespassed on his property. Under Oklahoma law, "[t]respass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession." Williamson v. Fowler Toyota, Inc., 956 P.2d 858, 862 (Okla. 1998) (citing Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A., 496 P.2d 1185 (Okla. 1972)). Plaintiff's "particular theory" of trespass is that Ceja entered his property under the authority of a lease and drill permits that are legally inoperative because the BIA violated NEPA by approving them. Dkt. # 17, at 27. Plaintiff's claim for rent payment presents the same essential federal issue. Plaintiff may not recover rent if Ceja was on plaintiff's land pursuant to a valid lease and permits. Thus, in order for plaintiff to prevail on his claims against Ceja, he must show that NEPA applies to the Superintendent's approval of leases and

10

drilling permits, which makes a federal issue an "essential element" of plaintiff's claims that is "necessarily raised."

Further, the federal issue is actually disputed. Plaintiff alleges that the BIA violated NEPA when it approved the lease and drilling permits without conducting the environmental impact analyses that are required by NEPA before any major federal agency action. Dkt. # 17, at 17. Ceja asserts that the Superintendent's approvals of the lease and drilling permits did not constitute major federal agency actions, and thus NEPA does not apply. Dkt. # 34, at 11. The parties' disagreement over the applicability of NEPA constitutes an actual dispute of a federal issue. See Gilmore, 694 F.3d at 1173 (finding an actual dispute where the plaintiff asserted that BIA approval was necessary under federal law before removing chat and the defendant argued that no BIA approval was necessary).

The federal issue is also substantial. In Gilmore, the Tenth Circuit found the federal issue "substantial" for four reasons: (1) the issue was closer to "a nearly pure issue of law that would govern numerous cases and issues" rather than an issue that was "fact-bound and situation specific"; (2) "a decision on that question would apply to a fair number of disputes"; (3) the issue implicated a "serious federal interest"; and (4) the federal issue was central to the case. Id. at 1174-76. The same factors are present in this case. First, the question of whether the Superintendent's approval of oil and gas leases and drilling permits falls under NEPA is a legal question that will have impact beyond the instant case. Second, issues related to the BIA's compliance with NEPA when approving oil and gas leases on Osage reservation land have come up in several recent federal cases, see, e.g., Hayes v. Chaparral Energy, LLC, 180 F. Supp. 3d 902 (N.D. Okla. 2016); Osage Producers Assoc. v. Jewell, 191 F. Supp. 3d 1243 (N.D. Okla. 2016); Donelson v. United States, No. 14-CV-316-JHP-

FHM, 2016 WL 1301169 (N.D. Okla. Mar. 21, 2016), and it is likely that whether BIA lease approvals fall under NEPA will arise in future cases. Third, the issue implicates a serious federal interest because it involves interpreting a federal statute to determine how it affects a federal agency. Fourth, the federal issue is central to the case because plaintiff cannot prevail without the Court answering the federal question. Thus, the federal issue is substantial.

Finally, the Court must consider "whether resolution of the issue in federal court would 'disturb[] any congressionally approved balance of federal and state judicial responsibilities.'" Grable, 545 U.S. at 314 (alteration in original). "[W]hen the exercise of jurisdiction will 'not materially affect, or threaten to affect, the normal currents of litigation' federal question jurisdiction may be proper notwithstanding the absence of a federal right of action." Gilmore, 694 F.3d at 1176 (quoting Grable, 545 U.S. at 319-20). Although, as noted above, several cases involving BIA approvals of leases and permits on Osage reservation land have recently arisen, "hearing such claims in federal court 'will portent only a microscopic effect on the federal-state division of labor.'" Id. (quoting Grable, 545 U.S. at 315). Additionally, the Tenth Circuit has found that "the federal judiciary's somewhat unique role in crafting common law as to Indian property issues" weighs in favor of jurisdiction. Therefore, considering the factors set forth in Becker, particularly as applied in Gilmore, the Court finds that it has subject matter jurisdiction over plaintiff's state law claims against Ceja.

## IV.

The Court now considers Ceja's motion for summary judgment (Dkt. # 13). Ceja argues that plaintiff cannot succeed on his trespass claim because it is barred by the statute of limitations and

plaintiff's predecessor-in-interest, Virginia Lenker, consented to Ceja's presence on the property.[5]
Dkt. # 13, at 5-6.

### A.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where
there is no genuine dispute as to any material fact and the moving party is entitled to judgment as
a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain
language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery
and upon motion, against a party who fails to make a showing sufficient to establish the existence
of an element essential to that party's case, and on which that party will bear the burden of proof at
trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a
disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which
are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327
(quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more
than simply show that there is some metaphysical doubt as to the material facts. Where the record
taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87
(1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's
position will be insufficient; there must be evidence on which the [trier of fact] could reasonably

---

[5]      Ceja also argued in its motion that plaintiff's APA claims against the federal defendants
should be dismissed. These arguments are now moot. See Part II.

find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

**B.**

Ceja first argues that the trespass claim against it is barred by the statute of limitations. Dkt. # 13, at 5. Under Oklahoma law, the statute of limitations for a trespass to real property is two years. Okla. Stat. tit. 12, § 95(A)(3). Ceja argues that <u>Magnolia Pipe Line Co. v. Polk</u>, 90 P.2d 1076 (Okla. 1939), precludes plaintiff's trespass claim. In <u>Magnolia Pipe Line</u>, the Oklahoma Supreme Court held that the two-year statute of limitations for trespass applied in the case of a continuing trespass, and that the statute of limitations accrued with the original entry onto the land. <u>Id.</u> at 1076-77. However, in <u>Magnolia Pipe Line</u>, the defendant was suing for monetary damages. <u>See id.</u> at 1076. How the statute of limitations affects a trespass claim depends on whether the plaintiff seeks relief in law or equity. The Oklahoma Supreme Court made this distinction clear in <u>Fairlawn Cemetery</u>, 496 P.2d at 1187. In <u>Fairlawn Cemetery</u>, the plaintiff built a wall around a portion of its cemetery that sat two-and-one-half inches inside its property line. <u>Id.</u> at 1186. The defendant later built a church on the lot south of the cemetery. <u>Id.</u> During the church's construction, the defendant piled several feet of dirt against the wall, which the defendant left after construction was complete. <u>Id.</u> Over ten years after the church's construction, the plaintiff discovered that the piles of dirt had caused the wall to crack and lean. <u>Id.</u> In discussing the plaintiff's available remedy, the Supreme Court stated the following:

14

> In <u>Bradley v. Renfrow</u>, 84 P.2d 430 (Okla 1938), we said 'where a trespasser persists in trespassing upon (the land) of another, and threatens to continue his wrongful invasion of the premises, equity will restrain such trespass.' While we agree the church should be enjoined from continuing the dirt fill on Cemetery's property and should be required to remove the encroaching dirt between the wall and Cemetery's south property line, we find the plaintiff is barred by the statute of limitations in seeking to require the church to re-establish vertical alignment of the west 540 feet of its concrete fence. The restoration of the wall to its former condition is in the nature of damages for trespass which is subject to a limitation period of two years. [Okla. Stat. tit. 12, § 95; <u>Magnolia Pipe Line</u>, 90 P.2d at 1076.]

<u>Fairlawn Cemetery</u>, 496 P.2d at 1187. As to its trespass claim, plaintiff asks the Court only for an injunction "restraining Ceja from further trespass until it obtains valid authority." Dkt. # 32, at 16. Under <u>Fairlawn Cemetery</u>, an injunction for continuing trespass is not subject to the statute of limitations. Therefore, plaintiff's trespass claim is not barred by the two-year statute of limitations.

## C.

Ceja also asserts that plaintiff's claims against it are barred by the doctrine of consent. Dkt. # 13, at 6. "Trespass is not committed if there is permission or consent to do [the] acts complained of, which consent may be implied from circumstances." <u>Antonio v. Gen. Outdoor Advert. Co.</u>, 414 P.2d 289, 291 (Okla. 1966); <u>see also</u> <u>Nahno-Lopez v. Houser</u>, 625 F.3d 1279, 1284 (10th Cir. 2010) (applying Oklahoma law). Ceja has presented evidence that it kept Virginia Lenker informed of new projects on the property before they began. <u>See</u> Dkt. # 13-1, at 4-17.When a new project was to begin on the property, Ceja would speak with Virginia Lenker to discuss the project and negotiate a payment for her. <u>Id.</u> Ceja would then send a letter with the details of the agreement and a check for the agreed upon amount. <u>Id.</u> Virginia Lenker would sign and return the letter to Ceja and accept the check. <u>Id.</u> Specifically as to well 6H, on November 19, 2005, Virginia Lenker received and accepted $4,500 "as full compromise and settlement for damages arising out of our drill-site location." <u>Id.</u> at 12-14. Additonaly, on June 15, 2010, Virginia Lenker signed and returned to Ceja

15

an IRS Form W-9 related to the $4,000 she accepted as commencement money for well 7. Id. at 15-17. Plaintiff does not dispute that Virginia Lenker signed the letters and accepted Ceja's payments, but presents evidence that plaintiff and his predecessors-in-interest accepted Ceja's presence on their land only because they believed the BIA had granted valid approval for Ceja's presence. Dkt. # 32-6, at 3. Additionally, plaintiff states that Ceja told plaintiff and his predecessors-in-interest that Ceja had a right to be on the property regardless of their wishes. Id.

Ceja has presented evidence that the Virginia Lenker gave Ceja her implied consent to be on her property. She was informed of the projects occurring on her land and accepted payment from Ceja. Plaintiff has presented no evidence that the implied consent was ever revoked. Plaintiff's argument is that the consent was never effective because it was based on a mistake. The key question here is whether consent based on a mistake can be a defense to trespass. Under the Restatement (Second) of Torts § 892B(2), consent is not effective if it was induced by a "substantial mistake" and "the mistake is known to the other or is induced by the other's misrepresentation." Oklahoma courts have not addressed the issue of consent premised on a mistake in the context of a trespass claim, but the Oklahoma Supreme Court has adopted a standard similar to the Restatement for consent to medical operations. See Karriman v. Orthopedic Clinic, 516 P.2d 534, 539 (Okla. 1973) ("[W]e recognize that consent to an operation is not valid if obtained by representation which are false [t]o the knowledge of the surgeon making them."). Even if the lease and permits were invalid, plaintiff has presented no evidence that Ceja knew about it, or that Ceja misrepresented its

16

authority to be on the land.[6] Plaintiff's evidence shows that the BIA knowingly violated NEPA, not Ceja. To invalidate consent, plaintiff must show that Ceja knew about the NEPA violations or induced consent through its misrepresentations. Plaintiff has failed to do so, and thus its trespass claim cannot survive summary judgment.

Plaintiff also asserts a claim against Ceja for rent payments under Okla. Stat. tit. 41, § 19. Section 19 states that "[t]he occupant of any land, without special contract shall be liable for the rent to any person entitled thereto." The Oklahoma Supreme Court has interpreted "special contract" to mean either an express or implied contract. Exch. Bank of Commerce v. Meadors, 184 F.2d 458, 465 (Okla. 1947). Moreover, even if the contract is invalid, "it will nevertheless regulate the terms of the tenancy as respects the rent" and preclude recovery under § 19. Id. Here, Ceja was present on plaintiff's land pursuant to contracts with the BIA, to which plaintiff was a third-party beneficiary, and contracts with Virginia Lenker regarding the payment she would receive for Ceja's actions on the property. Under Exchange Bank of Commerce, even if these contracts are all invalid, they preclude plaintiff from collecting rent under § 19. Therefore, Ceja's summary judgment motion should be granted.

**IT IS THEREFORE ORDERED** that the federal defendants' motion to dismiss for lack of subject matter jurisdiction (Dkt. # 39) and Ceja Corporation's motion for summary judgment (Dkt. # 13) are **granted**.

---

[6]     Ceja's assertions that it had the right to be on the land regardless of the Lenkers' consent is not a misrepresentation. If Ceja had a valid lease and drilling permit, once a commencement payment was made to the Lenkers, Ceja had the immediate right to occupy the drilling site. See 25 C.F.R. § 226.19(b).

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to conduct discovery from federal defendants (Dkt. # 46) and the federal defendants' motion for an extension of time to file a response to plaintiff's motion for leave to conduct discovery (Dkt. # 50) are **moot**.

**DATED** this 9th day of February, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE